**2023-1935**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

_____

LYNK LABS, INC.,

Appellant,

v.

SAMSUNG ELECTRONICS CO., LTD.,

Appellee.

_____

On Appeal from the USPTO Patent Trial and Appeal
Board No. IPR2021-01347 for U.S. Pat. No. 10,966,298

---

**REPLY BRIEF OF APPELLANT LYNK LABS, INC.**

---

James T. Carmichael*
Stephen T. Schreiner
Stephen P. McBride
Minghui Yang*
CARMICHAEL IP, PLLC
8607 Westwood Center Drive, Suite 270
Tysons Corner, VA 22182
(703) 646-9255
jim@carmichaelip.com
schreiner@carmichaelip.com
stevemcbride@carmichaelip.com
mitch@carmichaelip.com
*Not admitted in Virginia

*Counsel for Appellant Lynk Labs, Inc.*                    December 4, 2023

# CERTIFICATE OF INTEREST

I certify the following information is accurate and complete to the best of my knowledge.

Respectfully submitted,

*/s/* Stephen P. McBride
*Counsel for Appellant Lynk Labs, Inc.*

**1.     Represented Entity**

Lynk Labs, Inc.

**2.     Real Party in Interest**

N/A

**3.     Parent Corporation and Stockholders**

N/A

**4.     Legal Representatives**

Other than counsel already entered an appearance in this court, the following counsel have made previous appearances in related or lower court proceedings:

Jason A. Engel, Katherine L. Allor, Erik J. Halverson, and
Dennis J. Magewski of the firm K&L Gates

**5.     Related Cases**

A Notice of Related Case Information was filed on June 5, 2023, ECF No. 9.

**6.     Organizational Victims and Bankruptcy cases**

N/A

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES .................................................................. iii

I.      INTRODUCTION .....................................................................1

II.     THE BOARD ADOPTED A *SUA SPONTE* CONSTRUCTION OF "WIRELESSLY" ....................................................................3

III.    THE BOARD'S CONSTRUCTION IS INCORRECT................................11

    A.      Appellee Ignores The Intrinsic Record ...............................11

    B.      The Extrinsic Evidence Supports Patent Owner's Construction ........17

    C.      The Capacitors In The '298 Patent and Birrell Do Not Receive Power Wirelessly..................................................23

IV.     UNDER THE CORRECT CONSTRUCTION, BIRRELL DOES NOT "RECEIVE POWER WIRELESSLY"................................27

V.      CONCLUSION........................................................................33

CERTIFICATE OF SERVICE ..............................................................34

CERTIFICATE OF COMPLIANCE.......................................................35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
   299 F.3d 1336 (Fed. Cir. 2002) ........................................................4

*Amkor Tech., Inc., v. ITC*,
   692 F.3d 1250 (Fed. Cir. 2012) ........................................................9

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
   816 F.3d 788 (Fed. Cir. 2016) ........................................................9

*Ciba-Geigy Corp. v. Alza Corp.*,
   68 F.3d 487 (Fed. Cir. 1995) ........................................................17

*Conoco, Inc. v. Energy & Envtl. Int'l*,
   460 F.3d 1349 (Fed. Cir. 2006) ........................................ 1, 4, 8, 10, 21

*Elbit Sys. Of Am., LLC v. Thales Visionix, Inc.*,
   881 F.3d 1354 (Fed. Cir. 2018) ........................................................7

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).....................13

*Palo Alto Networks v. Finjan, Inc.*,
   752 F. App'x 1017 (Fed. Cir. 2018) ..................................................8

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .................................... 5, 11, 13, 17, 19

*Realtime Data, LLC v. Iancu*,
   912 F.3d 1368, (Fed. Cir. 2019) ........................................................3

*Standard Oil Co. v. Am. Cyanamid Co.*,
   774 F.2d 448 (Fed. Cir. 1985) ........................................................11

*Sulzer Textil A.G. v. Picanol N.V.*,
   358 F.3d 1358 (Fed. Cir. 2004) ....................................................5, 6

*TVIIM, LLC v. McAfee, Inc.*,
   851 F.3d 1356 (Fed. Cir. 2017) ....................................................8, 9

## TABLE OF AUTHORITIES (Cont.)

<u>**Page**</u>

*United States Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997) ...............................................................5

*Vivid Techs. v. American Science*,
  200 F.3d 795 (Fed. Cir. 1999) ................................................................3

**Statutes**

35 U.S.C. § 141 ..................................................................................4, 10

## I.    INTRODUCTION

Samsung's attempt to demonstrate Patent Owner waived its right to appeal the Board's *sua sponte* claim construction of "receiving power wirelessly" is unavailing and Samsung fails to provide intrinsic support for the Board's incorrect construction.

Samsung first argues that Patent Owner waived its right to challenge the Board's *sua sponte* construction because Patent Owner did not propose an express construction of the claim term "receiving power wirelessly" during the IPR. Appellee Br., 30-36. Samsung is wrong. Patent Owner had no way to know that the Board would provide a *sua sponte* construction of the term "wirelessly" in the Final Written Decision. And Samsung never presented a construction for the term. Regardless of whether the parties brief a term for claim construction, Patent Owner has the legal right to *de novo* review of terms the Board construes. Indeed, the authority Samsung cites to support its waiver argument directly contradicts Samsung's position. *Conoco, Inc. v. Energy & Envtl. Int'l*, 460 F.3d 1349, 1358 (Fed. Cir. 2006) (cited throughout Samsung's brief) actually ***requires*** *de novo* review on the exact issue Patent Owner raises here.

Samsung leads with a waiver argument because its merits arguments are untenable. Samsung argues the Board's *sua sponte* construction is correct, but identifies ***no intrinsic support*** for its position. This is because the Board's *sua sponte*

construction contradicts the intrinsic record and Patent Owner's extrinsic evidence in favor of marginal extrinsic evidence from Samsung that does not address the issue that Patent Owner raises. Samsung never attempts to address the fact that, under the Board's construction, any circuit element that conducts internally without the literal use of a metal wire (e.g., capacitors, diodes, and transistors) is "receiving power wirelessly."

Finally, Samsung argues Birrell anticipates claims 6 and 24 even under Patent Owner's construction. Appellee Br., 53-58. But Samsung's argument does not actually apply Patent Owner's construction. Instead, Samsung continues to rely on the Board's incorrect and unsupported construction. *Id.* Under Patent Owner's correct construction, Birrell does not teach the limitation "receiving power wirelessly." Accordingly, this Court should reverse.

## II.  THE BOARD ADOPTED A *SUA SPONTE* CONSTRUCTION OF "WIRELESSLY"

The Final Written Decision *sua sponte* stated, without any intrinsic analysis or support, that "the claim term 'wirelessly' is best understood as 'without the use of a wire'":

> By its express language, the claim term "wirelessly" is best understood as "without the use of a wire."  We are directed to no disclosure in the written description or prosecution history that would contradict this conclusion or otherwise shed light on the meaning of this claim term.

**Appx50 [FWD].**

Samsung argues that the Board's express construction of "wirelessly" is not a construction of the claim term "wirelessly." Appellee Br., 30-36. Samsung is incorrect.

As Samsung notes, "[t]he Board is required to construe 'only those terms … that are in controversy, and only to the extent necessary to resolve the controversy." *Realtime Data, LLC v. Iancu*, 912 F.3d 1368, 1375 (Fed. Cir. 2019) (quoting *Vivid Techs. v. American Science*, 200 F.3d 795, 803 (Fed. Cir. 1999). The Board here clearly believed that construing "wirelessly" was necessary to resolve the parties' dispute because it provided a construction in the Final Written Decision. Appx50 [FWD]. The Board clearly understood it was construing "wirelessly," because it

attempted to perform a claim construction analysis. First, the Board explained why it was (incorrectly) ignoring the intrinsic record, stating "[w]e are directed to no disclosure in the written description or prosecution history that would contradict this conclusion." Appx50 [FWD]. Then, the Board discussed the extrinsic evidence. Appx50-51 [FWD]. Thus, the Board was clearly attempting to perform a *Phillips*-style claim construction analysis.

Samsung's contention, that the Board's express construction was not a construction, rely on the fact that neither party expressly proposed a construction of "receiving power wirelessly." Appellee Br., 31-33. Regardless of whether either party proposed the construction, when, as here, the Board *sua sponte* construes a term in the Final Written Decision, that construction is appealable. This is mandated by *Conoco*, where this Court held: "[b]ecause the [decision on appeal] explicitly construed the term *sua sponte* and applied the construction to the facts, we ***must*** review its construction *de novo*." *Conoco,* 460 F.3d at 1358 (emphasis added). *See also*, *Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1344 (Fed. Cir. 2002) ("Claim construction is a matter of law and is reviewed de novo."), and 35 U.S.C. § 141(c) ("A party to an inter partes review . . . who is dissatisfied with the final written decision of the [Board] under section 318(a) . . . may appeal the Board's decision . . . ."); ). Samsung argues that the Board found no term required express construction (Appellee Br., 31), but that argument is contradicted by the Final Written Decision's

4

analysis of claim 6, which applies the Board's express construction of the term "wirelessly." Appx50-51 [FWD].

Samsung attempts to characterize the Board's construction of "wirelessly" as the plain meaning of the term. Appellee Br., 31-32. In determining the plain meaning, courts "must look at the ordinary meaning in the context of the written description and the prosecution history." *Phillips*, 415 F.3d, 1314. As discussed below, both Samsung and the Board completely ignore the intrinsic record.

Samsung cites *Sulzer Textil A.G. v. Picanol N.V.,* 358 F.3d 1358, 1367 (Fed. Cir. 2004) for the proposition that the Board is not required to construe terms where the parties do not dispute the plain meaning. Appellee Br., 31-32. The quote from *Sulzer* is summarizing this Court's prior decision in *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997), where this Court held that when parties do not dispute the meaning of a term, the district court is not required to instruct the jury as to a particular construction. *Sulzer*, 1366-67. *Sulzer*, however, distinguished *U.S. Surgical* because "the meanings of several claim terms were in dispute [in *Sulzer* and t]he 'plain meaning' recognized and not disputed to apply in *U.S. Surgical* was not present" *Id.,* 1367.

This case is distinguishable from *U.S. Surgical* where Appellant complains the court did not construe a term that the parties had not proposed for construction. Here instead, the Board provides a *sua sponte* construction that directly contradicts Patent

Owner's understanding of the plain meaning of the term. Appellant Br., 14-25, Appx415-416 [Sur-Reply], Appx6067-6070 (explaining that "a POSITA would not understand the mere use of capacitors in a circuit to imply wireless power transmission"), Appx6096 (explaining why "[a] POSITA would not understand the use of capacitors to be wireless power transfer"), [Credelle Decl.], ¶¶76-81, 149-150. This contradiction arises because the Board's construction requires that every device that uses a capacitor or any other circuit element that internally conducts without a metal wire (i.e., virtually every electronic device) would be "receiving power wirelessly." *Id.* In other words, under the Board's construction, every electronic device that includes at least one capacitor or any other circuit element that internally conducts without a metal wire is considered to receive power wirelessly.

Thus, as in *Sulzer*, the meaning of the disputed phrase ("receiving power wirelessly") is clearly in dispute and clearly appealable.

Samsung argues that "when Samsung argued in reply that 'the capacitor elements in *Birrell* are physically separated and transfer power and data *without wires*,' [ ], Lynk did not object that such characterization did not accord with the plain meaning of the term 'wireless.'" Appellee Br., 32 (emphasis in Brief). This is incorrect. Lynk's Sur-Reply argued that "[t]he fact that Birrell has a thin dielectric layer between its plates does not make Birrell wireless." Appx415-416 [Sur-Reply]. Later, Lynk specifically quoted Samsung's argument above and responded that

"a POSITA would not understand capacitors to involve wireless power transmission:"

> Petitioner argues that "the capacitor elements in Birrell are physically separated and transfer power without wires." Reply, 27. But as discussed above and in the POR, *all capacitors have a similar dielectric gap to the one discussed for Birrell's capacitors*. *Supra*, §II.A, POR, 20. To the extent that the thin dielectric gap in Birrell's capacitors—roughly the width of a human hair—is considered "wireless", every circuit utilizing a capacitor would be "wireless". *Id.* Accordingly, a POSITA would not understand capacitors to involve wireless power transmission. *Id.*

**Appx435-436**

[Sur-Reply]. Thus, Patent Owner clearly identified Samsung's argument as contrary to the ordinary meaning of the term "wireless" as understood by a POSITA.

Samsung's other purported authority is distinguishable and in some cases directly contradicts Samsung. In *Elbit Sys. Of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1357 n.3 (Fed. Cir. 2018), Appellant complained that the Board had ***not construed*** a term that neither party had asked it to construe. *Id.* Here, to the contrary, the Final Written Decision ***expressly construes*** the term "wirelessly" in a manner that directly contradicted Patent Owner's understanding of the plain meaning of the term. Similarly, in *Palo Alto Networks v. Finjan, Inc.*, 752 F. App'x 1017, 1022-23

(Fed. Cir. 2018), the appellant "never argued to the Board that [the claim term] should be given any particular meaning." *Id.* Here, Patent Owner clearly argued to the Board that "receiving power wirelessly" had a meaning that directly contradicted the Board's claim construction.

*Conoco*, 460 F.3d at 1358-59 (cited throughout Samsung's brief) requires *de novo* review on the exact issue Patent Owner raises here. In particular, the parties in *Conoco* did not present the claim term "stable nonagglomerating suspension" for construction. *Id.*, 1359. "However, the district court explicitly construed the term in its *Findings of Fact and Conclusions of Law* stating [ ] '[t]he court reads the term 'stable nonagglomerating suspension' to mean that the polymer particles are stable and not agglomerating… .'". *Id.* (italics in original). This Court held in *Conoco* that "[b]ecause the court explicitly construed the term *sua sponte* and applied the construction to the facts, we must review its construction *de novo*." Just like Samsung's authority in *Conoco*, the Board here explicitly construed "wirelessly" in its Final Written Decision and applied its new construction to the facts. Further, the Board's construction here is even more explicit than in *Conoco* because the Board expressly referenced the intrinsic and extrinsic evidence in discussing its construction. Thus, *Conoco* requires *de novo* review in this situation.

Samsung's arguments to the contrary simply ignore the Board's express construction. Samsung argues Lynk "had an obligation to present [its] construction

8

to the Board." Appellee Br., 34. But Lynk could not know that the Final Written Decision would *sua sponte* construe the term, and do so in a way that contradicts the intrinsic evidence.

The other cases Samsung cites have nothing to do with a Final Written Decision that provides a *sua sponte* claim construction. In *Amkor Tech., Inc., v. ITC,* 692 F.3d 1250, 1259 (Fed. Cir. 2012), the intervenor argued the term "fully around" was indefinite before the ITC and then "switch[ed] positions on appeal, now arguing in support of the position it opposed below." *Id.* at 1259. As explained above, Lynk's construction here is completely consistent with its arguments during the IPR. In *TVIIM, LLC v. McAfee, Inc.*, 851 F.3d 1356, 1361-63 (Fed. Cir. 2017), appellant argued that a "jury rendered an inconsistent verdict" because certain claim terms "have more than one ordinary meaning." *Id.,* 1362-63. In *TVIIM*, this Court found no error in the district court submitting several claim terms to a jury without instruction where no party had argued for a construction of the terms. *Id.* Here, the Board construed the term *sua sponte.* In *Apple Inc. v. Samsung Electronics Co., Ltd.*, 816 F.3d 788, 811 (Fed. Cir. 2016), Apple raised a new claim construction only after a jury found non-infringement. Here, the Board expressly raised the new claim construction issue by *sua sponte* construing "wireless." None of Samsung's cases overcomes Patent Owner's statutory right to appeal the Board's findings in a Final

Written Decision, including by challenging the Board's claim construction rulings. 35 U.S.C. § 141(c).

Samsung argues that "Lynk's challenge to the Board's plain-term reading of 'wirelessly' is meritless." Appellee Br., 35. This argument implicitly concedes the Board construed the term "wirelessly" by providing a "plain-term reading" as in *Conoco*, thus contradicting Samsung's waiver argument. Further, it is incorrect. As discussed below (*infra*, §III), Patent Owner's challenge is not meritless, but instead reflects the proper construction of the claim term "receiving power wirelessly."

Samsung argues "Lynk's real grievance is not with the [Board's] implicit claim construction but with the application of this construction to the question of whether Birrell anticipates claim 6." Appellee Br., 35-36. (internal quotations omitted). Samsung's argument has at least two problems. First, Samsung again admits that the Board construed the term "wirelessly," directly contradicting its argument for waiver. *Id.* Second, Samsung's argument is divorced from reality. Patent Owner is challenging the Final Written Decision's express construction of "wirelessly." Appellant Br., 16-24. Patent Owner is not challenging the application of the Board's incorrect construction to the facts. Indeed, Samsung admits elsewhere that Lynk "only argues that there is no anticipation under its own proposed construction." Appellee Br., 36. This is because the Board's construction essentially reads the limitation out of the claim, since virtually every electronic device "receiv[es] power

10

wirelessly" under the Board's construction. All capacitors would both transmit and receive power wirelessly and virtually all electronics incorporate capacitors. Accordingly, the Board's *sua sponte* construction of "wirelessly" must be reviewed *de novo* by this Court.

## III. THE BOARD'S CONSTRUCTION IS INCORRECT

### A.    Appellee Ignores The Intrinsic Record

Patent Owner's opening brief construes "receiving power wirelessly" as "receiving power from an external source not physically connected to the apparatus." Appellant Br., 16. Samsung criticizes Patent Owner's construction, but cites no intrinsic evidence in support of the Board's *sua sponte* construction. Instead, Samsung commits the cardinal sin of relying ***solely*** on extrinsic evidence. Extrinsic evidence "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005). Indeed, "[t]he specification is [ ] the primary basis for construing the claims." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)).

Samsung argues that "the Board was solicitous to make sure that any extrinsic evidence it considered did not contradict anything in the plain language of the

11

claims, the specification, or the prosecution history." Appellee Br., 47. To the contrary, the Board expressly stated that it did not rely on the intrinsic record because it was "directed to no disclosure in the written description or prosecution history that would contradict [its] conclusion." Appx50 [FWD]. This statement clearly indicates the Board *did not review* the written description or prosecution history in providing its *sua sponte* construction. Indeed, the Board cites no intrinsic support for its construction. Appx50-51. *See, e.g.,* Appellant Br., 16-23.

Nor is it surprising that Patent Owner did not specifically direct the Board to intrinsic evidence for construing the term "wirelessly" since the Board's construction was *sua sponte*. Further, the issue of whether capacitors necessarily receive power wirelessly only arose in Petitioner's reply, when Samsung for the first time argued that all capacitors receive power wirelessly because capacitive coupling can in some applications be used to wirelessly transfer power. Appx390-391 [Reply].

Samsung does not dispute that "the specification suggests capacitive coupling is distinct from the [ ] wireless techniques of the '298 patent." Appellee Br., 48-49. Instead, Samsung argues that "the claims are not, in general, limited to the embodiment having an antenna." Appellee Br., 49. But "[a claim] term can be defined only in a way that comports with the instrument as a whole." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389, 116 S.Ct. 1384, 134 L.Ed.2d 577

12

(1996). *See, e.g., Phillips*, 415 F.3d at 1315 ("the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.") (internal citations and quotations omitted). While Samsung appears to concede that the embodiments of the '298 Patent directed to receiving power via antenna support Patent Owner's construction (*id.*), it cites no intrinsic evidence to the contrary. Samsung does not address Patent Owner's intrinsic evidence showing that capacitors in the '298 Patent are repeatedly used as part of ordinary wired circuit elements and presents no evidence that a POSITA would consider the capacitors disclosed in the '298 Patent to receive power wirelessly. Further, the specification of the '298 Patent is completely devoid of any examples where capacitors are used for transmitting or receiving power wirelessly. Appellant Br., 21-22. Nor does Samsung provide any evidence that capacitive coupling means receiving power wirelessly. Thus, Patent Owner's construction best comports with the intrinsic record.

Nor does Samsung address Patent Owner's intrinsic evidence showing that in the claims, power is wirelessly transmitted from one device to another. Appellant Br., 22-23. That is, "receiving power wirelessly" as used in the claims of the '298 Patent means receiving power from an external source not physically connected to the apparatus. *Id.* Samsung fails to identify any embodiments of the '298 Patent that

use capacitors for wireless power transfer. Thus, the intrinsic evidence contradicts the Board's limiting construction.

Samsung takes issue with Patent Owner's construction, arguing that "the intrinsic evidence shows that the claim terms are not, in general, limited to the embodiments having an antenna, [ ] nor limited [to] a particular wireless technique." Appellee br., 49. Patent Owner's construction is not limited to embodiments having an antenna and does not use the term "antenna." Further, Patent Owner's construction is limited to the wireless technique of "receiving power [rather than data] wirelessly" because the express language of the claim requires "receiving power wirelessly." Patent Owner discusses embodiments using an antenna to receive power wirelessly to demonstrate that the '298 Patent's wireless embodiments are not related to capacitors.

Samsung argues that "the intrinsic evidence that Lynk invokes does not inform whether a skilled artisan would have considered a capacitive coupling like that of Birrell 'wireless.'" Appellee Br., 49. But Birrell's "capacitive coupling" is performed by ordinary "capacitors 66." Appx1200, Appx1201, Appx1206, Appx1218-1220 [Birrell], 18:6-12, 19:1-11, 24:31-35, Figs. 8, 9, 11. The issue is that ordinary capacitors are not generally used to "receive power wirelessly." Patent Owner's opening brief cites numerous excerpts from the '298 Patent specification where capacitors (that, by definition, use capacitive coupling) are shown in ordinary

14

"wired" embodiments that are not "receiving power wirelessly." *See, e.g.,* Appellant Br., 19-21. Samsung identifies nothing in the intrinsic record contrary to this overwhelming intrinsic evidence.

Samsung takes issue with Patent Owner's annotations to Fig. 51 (reproduced below), arguing that the '298 Patent "does not describe antenna 2060 as receiving wireless power." Appellee Br., 49:



**Appellee Br., 49**

Samsung is incorrect. Fig. 51 discusses that "the alternating electric field [i.e., the power] is provided (as it could be with any embodiment disclosed herein) by either an antenna 2060 or a signal generator 2061." Appx121 ['298 Patent], 23:28-31. The antenna 2060 and the signal generator 2061 are the only power sources

shown in Fig. 51's circuit. In embodiments where signal generator 2061 is not used, antenna 2060 must power the circuit. Antenna 2060 accordingly receives power wirelessly in Fig. 51 of the '298 Patent.

Samsung argues that "the intrinsic record and Lynk's own briefing below reaffirm the distinction between 'wired' and 'wireless,' consistent with the Board's analysis." Appellee Br., 49-50. The evidence cited by Samsung appears to support Patent Owner's argument. Samsung correctly points out that Fig. 37 discloses an antenna 1108 acting as a "transmission conductor"—that is, "receiving power wirelessly." *Id.* Samsung also points to two quotes from Patent Owner that indicate the '298 Patent discloses receiving power wirelessly through the antenna 2060 of Fig. 51. *Id.* In each case, an antenna provides the wireless power. The embodiments of the '298 Patent with capacitors, on the other hand, each show the capacitor as part of a "wired" circuit, and not "receiving power wirelessly":



**Appellee Br., 19-22.**

16

Accordingly, the intrinsic evidence supports Patent Owner's construction without exception.

## B.    The Extrinsic Evidence Supports Patent Owner's Construction

Unable to point to any alleged support in the intrinsic record, Samsung relies entirely on extrinsic evidence to argue for the Board's *sua sponte* construction. *See, e.g.,* Appellee Br., 42-44, 50-53. While courts are permitted in their sound discretion to refer to extrinsic evidence for claim construction purposes, extrinsic evidence is viewed "as less reliable" than the intrinsic record and is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic record." *Phillips*, 415 F.3d, 1318-1319. Thus, Samsung's analysis is inherently unreliable.

Samsung cites *Ciba-Geigy Corp. v. Alza Corp.*, 68 F.3d 487 (Fed. Cir. 1995) for the proposition that "extrinsic evidence may be considered when it is used to explain, but not expand, the meaning of a reference." Appellee Br., 47. But as discussed above, Samsung ignores the intrinsic record in favor of extrinsic evidence that contradicts the intrinsic disclosure of the '298 Patent, which discloses numerous capacitors (with capacitive coupling) that do not receive power wirelessly. Appellee Br., 17-22. To the extent Samsung argues to interpret the Birrell reference using unrelated extrinsic patent publications, those extrinsic publications also contradict

Birrell's clear teachings that its capacitors are directly connected as part of a wired circuit and do not receive power wirelessly. Appellee Br., 25-30.

Samsung argues that the Board "considered whether a skilled artisan would have considered Birrell's capacitive coupling to be 'wireless' in the context of the '298 patent." Appellee Br., 42 (citing Appx50 (which is page 50 of the FWD). This is incorrect. The Board expressly did not consider the context of the '298 Patent in construing the term "wirelessly." Nothing on page 50 of the FWD cites the '298 Patent. *Id.* Indeed, the only citation to the '298 Patent in the Board's entire discussion of claim 6 is to summarize the claim language at the start of the section. Appx49; *see generally* Appx49-51. The only other reference to the '298 Patent in the Board's discussion of claim 6 is where the Board indicates it did not rely on the '298 Patent to provide its *sua sponte* construction because "[w]e are directed to no disclosure in the written description or prosecution history that would contradict" the *sua sponte* construction. Appx50. Thus, Samsung is incorrect that the Board considered the '298 Patent in construing the term "wireless."

Samsung points out that the Board's *sua sponte* construction relied on several extrinsic patent publication filed with Samsung' expert's reply declaration. Appellee Br., 42.[1] But extrinsic evidence "is unlikely to result in a reliable interpretation of

---

[1] Patent Owner had no ability of right to file rebuttal evidence in its sur-reply to Samsung's reply evidence.

patent claim scope unless considered in the context of the intrinsic evidence." *Phillips* 415 F.3d at 1319. The Board's *sua sponte* construction improperly relied ***exclusively*** on these extrinsic reply exhibits, citing no other support. *See* Appx51 (discussing the '031 and '026 Patents).

Samsung's extrinsic patent publications are exactly the sort of "potential extrinsic evidence of some marginal relevance" that *Phillips* warns are "less reliable" than the intrinsic record. *Phillips*, 415 F.3d, 1318. As Samsung notes, these references "relate[] to wireless power transfer systems" using capacitive coupling. Appellee Br., 43 (emphasis in original). This highlights the flaw in the Board and Samsung's reasoning. The patent publications Samsung relies on are in the field of wireless power transfer and explain that capacitive coupling *can be* used for wireless power transfer. They do not indicate that capacitive coupling is only used for wireless power transfer, and neither the '298 Patent nor Birrell use capacitors in that manner.

As is clear from the '298 Patent, capacitors are typical "wired" circuit elements; they are not used in the '298 Patent to transfer power wirelessly. *See* §III.A, *supra*. The mere existence of a capacitor in a circuit does not mean that the circuit "receives power wirelessly." While systems can be designed that use capacitive coupling to transfer power wirelessly, that is only one possible application of capacitive coupling. Indeed, the '298 Patent discloses several other applications for capacitors,

including "current control, eliminating voltage spikes, grounding, [and] proximity sensing." Appellant Br., 21. Nothing in the '298 Patent or the extrinsic record supports the concept that the mere disclosure of a capacitor means that a system must "receive power wirelessly." *See* §III.A, *supra*.

Samsung argues that "the Board expressly found 'not persuasive' and lacking in explanation the testimony of Lynk's expert, who asserted that a person of ordinary skill in the art would not consider capacitive coupling to be wireless." Appellee Br., 43 (citing Appx51 and Appx6070 ¶80). The Board's statement has several issues. First, Patent Owner's expert, Dr. Credelle, was discussing that Birrell's capacitors are not disclosed as wireless and the use of capacitors does not imply receiving power wirelessly. Appx6070 [Credelle Decl.], ¶80. He did not use the term "capacitive coupling" in the cited paragraph.

Second, the Board faulted Mr. Credelle for not addressing an argument that was not raised until *after* his expert report. Samsung's reply introduced the argument that because wireless power transfer systems can be designed using capacitive coupling, Birrell's system necessarily transfer power wirelessly because it uses capacitors. As a result, Patent Owner had no ability to put in further expert testimony on sur-reply, thus, Patent Owner's expert was never afforded the chance to respond to Samsung's reply argument. PTAB Trial Practice Guide, 73 ("[t]he sur-reply may not be accompanied by new evidence other than deposition transcripts of the cross-

20

examination of any reply witness."). The Board and Samsung therefore fault Patent Owner's expert for not responding to an argument that had not yet been raised by Samsung.

Samsung argues that the Board's incorrect construction is "owed considerable deference." Appellee Br., 44. Samsung is wrong for two reasons. First, this Court reviews constructions *de novo* where, as here, the order on appeal "explicitly construed the term *sua sponte* and applied that construction to the facts." *Conoco*, 460 F.3d at 1359. Second, the Board's construction is not based on substantial evidence because it focuses on marginally relevant extrinsic patent publications to the exclusion of intrinsic evidence. And the extrinsic evidence the Board relies on does not stand for the proposition that all capacitors transfer power wirelessly. The only extrinsic evidence discussing the relevant issue of whether capacitors transfer power wirelessly—the Birrell reference—distinguishes between "wireless" radio frequency embodiment and the "direct connection" embodiments using Birrell's capacitors as part of a wired circuit. Appellee Br., 23-25; Appx1190 [Birrell], 8:14-24. Thus, Birrell, consistent with the intrinsic record, does not consider its capacitors to "receive power wirelessly."

Samsung argues that Birrell does not distinguish between wireless transmissions and the "direct connection" embodiment using Birrell's capacitors because the passage Patent Owner cites is "specifically directed to a discussion of 'data

21

communication'—not power transfer." Appellee Br., 44-45. Samsung obfuscates Birrell's disclosure. The issue is not whether capacitors conduct power or data—the Parties agree that Birrell's capacitors can conduct both power and data. Instead, the issue is whether capacitors in Birrell are considered "wireless" or providing a "direct connection." Appellant Br., 26-28. In the only embodiment where Birrell mentions the term "wireless," Birrell distinguishes between "wireless techniques such as radio frequency" and "direct connection such as modulation of the external power source" as in Birrell's capacitor embodiments. Appx1190 [Birrell], 8:14-20. Birrell's capacitors are part of a "direct connection" embodiment where the lighting element is "secured to the supporting surface" rather than the "wireless" embodiment:



**Appx1188, Appx1218-1220 [Birrell], 6:31-36, Figs. 8, 9, 11.**

Samsung argues that "Lynk's argument does not comport with the understanding in the art that capacitors require separation between the capacitive plates." Appellee Br., 46. This argument assumes that the Board's construction is correct but does not address the fact that POSITAs do not consider all capacitors as receiving power wirelessly. Appellant Br., 16-24. It also ignores the fact that both the '298 Patent and Birrell disclose capacitors as elements of ordinary "wired" circuits.

Accordingly, the extrinsic evidence favors Patent Owner's construction.

## C.    The Capacitors In The '298 Patent and Birrell Do Not Receive Power Wirelessly

Samsung argues that "the Board correctly found it undisputed that Birrell's capacitive coupling lacks the use of wires." Appellee Br., 36. Samsung mischaracterizes the issue raised by Patent Owner. The issue is not whether capacitive coupling uses wires, the issue is whether an ordinary capacitor (as disclosed in the '298 Patent and Birrell) would be understood by a POSITA to "receive power wirelessly." As discussed above and in Patent Owner's opening brief, the '298 Patent is clear that capacitors are one element of ordinary wired circuits. Appellant Br., 19-22. Capacitors are commonplace circuit elements used in most electronic devices. Appx415-417, Appx435-436 [Sur-Reply], Appx6067-6070, Appx6096 [Credelle Decl.], ¶¶76-81, 149-150. As with many common circuit elements such as transistors or diodes, capacitors internally conduct power without

the literal use of wires. Appellant Br., 30-31. However, capacitors are still an ordinary "wired" circuit element. Appellant Br., 16-25, 25-31. Capacitors receive power through a wire, conduct that power across a dielectric, and then transmit the power through another wire. Appellant Br., 30-32. The Board's construction would mean that all devices that use capacitors—for example, laptops plugged into wall power outlets—are "receiving power wirelessly." A POSITA would not understand a laptop plugged into a wall to be receiving power wirelessly. *See, e.g.,* Appx6070 [Credelle Decl.], ¶80 ("the use of capacitors does not mean that the circuit is directed to wireless power transmission.").

Samsung argues, in a footnote, that Patent Owner did not dispute that Birrell's lighting tile receives data wirelessly. Appellee Br., 37 n5. Samsung is mixing two different embodiments. Patent Owner did not dispute this limitation because Birrell discloses wireless data transmission that is unrelated to the capacitors used in its wired circuit embodiment. Birrell discloses transmitting "data communication" using "wireless techniques such as radio frequency." Appx1190 [Birrell], 8. But Birrell's "wireless" "data communication" embodiment says nothing about wireless power. In other words, Birrell's only "wireless" embodiment transmits data via radio signals using antennas. This is different than transmitting power through Birrell's capacitors using a "direct connection." *Id.* According to Birrell, its capacitors do not use radio frequency and do not transmit data wirelessly. Appx1190 [Birrell], 8:14-20.

Patent Owner argues that Birrell's "dielectric layer [ ] physically separates the two capacitive plates.". Appellee Br., 38. *See also* Appellee Br., 39-42. As shown below, Birrell's capacitors 66 are one circuit element (denoted below using the same standard symbol for a capacitor that the '298 Patent uses):



**Appx1219 [Birrell], Fig. 9.**

Further, like every capacitor, Birrell's capacitors 66 are made up of a dielectric and two capacitive plates. Like every capacitor, the dielectric is positioned between the capacitive plates. Nothing in Birrell indicates these capacitors are used in a special manner to wirelessly receive power.

25

To the contrary, Birrell discloses that its capacitors may be part of a "series resonant circuit" and used for "energy storage": "the coupling capacitors 66a and 66b in series with inductor 101 and complex variable impedance elements 104, comprise the energy storage elements of the series resonant circuit." Appx1206 [Birrell], 24:31-34. Thus, Birrell's capacitors 66 store energy as part of a wired circuit. They do not "receiv[e] power wirelessly." And, as discussed above, Birrell distinguishes between "wireless techniques such as radio frequency" and "direct connection" circuits including capacitors 66. Appx1190 [Birrell], 8:14-20.

Samsung argues that "Lynk misses the mark with its repeated assertions that '[Birrell's] capacitive plates are directly connected on both sides by a physical wire'" because "nothing in claim 6's limitation of 'receiving power wirelessly' precludes the use of wires elsewhere in the apparatus." Appellee Br., 38 (quoting Appellant Br., 26-28, 30). Samsung's arguments misconstrue Patent Owner's point. Patent Owner is illustrating that Birrell's capacitors do not receive power wirelessly because (1) they are one element of a wired "circuit" and (2) they literally receive power via physical wires. Appellant Br., 26-28, 30.

Accordingly, the capacitors in Birrell support Patent Owner's construction because they form part of an ordinary wired circuit.

## IV.   UNDER THE CORRECT CONSTRUCTION, BIRRELL DOES NOT "RECEIVE POWER WIRELESSLY"

Under the proper construction for "receiving power wirelessly" of "receiving power from an external source not physically connected to the apparatus," Birrell does not disclose this limitation. Appellant Br., 25-30. Birrell's capacitors 66 are a single circuit element denoted by the common symbol for capacitors:



**Appx1219 [Birrell], Fig. 9.**

These capacitors are formed when Birrell's lighting element is "secured to the supporting surface by receptive force" via magnets, "mechanical fasteners" or

"adhesives." Appx1188, Appx1190 [Birrell], 6:31-35; 13:8-14. Indeed, Birrell's only use of the term "wireless" expressly distinguishes between "wireless techniques such as radio frequency" transmissions and "direct connection" techniques such as capacitors 66. Appx1190 [Birrell], 8:14-20. And there is no evidence in the record showing that Birrell's capacitors are anything other than ordinary capacitors. Thus, all elements of Birrell's capacitors 66 are "physically connected" and not wireless.

Samsung argues that Birrell anticipates even under the proper construction proposed by Patent Owner. Appellee Br., 53-58. But Samsung does not actually apply Patent Owner's construction. Instead, it analyzes Birrell under the Board's incorrect construction. *Id.* Samsung largely fails to address whether Birrell teaches "receiving power wirelessly" under Patent Owner's proper construction.

Samsung incorrectly argues that Birrell's capacitors 66 are not "physically connected." Appellee Br., Samsung first argues that "it is not apparent that Lynk's proposed definition is materially different from the understanding of the Board." Appellee Br., 53-54. The quotes Samsung calls out contradict Samsung's own position. The Board found that "the claim term 'wirelessly' is best understood as 'without the use of a wire'" Appx50 [FWD]. Patent Owner's position is that Birrell's capacitors are "physically connected (i.e., wired) circuit elements." Appellant Br., 33. That is, Patent Owner is arguing that that the absence of a literal contiguous "wire" (e.g., a metal conductor) in a circuit element does not mean the circuit

element would be considered to "receiv[e] power wirelessly." Patent Owner and its expert have pointed out in several places that many common circuit elements, including capacitors, operate by transferring power using a material that is not literally a "wire," yet are not considered by a POSITA to "receive power wirelessly." *Supra*, §§III.A, B, C, Appellant Br., 13, 14, 21, 24, 30. Samsung never provides a meaningful rebuttal to this point.

Samsung also quotes Patent Owner's statement that the capacitors in the '298 Patent transfer power using "wires physically connected to capacitors that are a circuit element in the wired circuit, not 'wirelessly' … ." Appellant Br., 54 (quoting Appellee Br., 20).[2] Patent Owner's point is that capacitors receive power via wires, just like other wired circuit elements.

Samsung incorrectly argues that "the evidence supporting the Board's decision applies equally under Lynk's proposed construction." Appellee Br., 54. Samsung points to Birrell Fig. 8 in support, arguing that "there is *no direct wired connection* between the power source and the [light tile 50]." Appellee Br., 55 (emphasis in original). Samsung's argument is wrong for several reasons. First, Samsung inserts the term "wired" into its argument. Samsung is arguing against Patent Owner's

---

[2] Samsung states this quote relates to Birrell's transfer of power, but Patent Owner's brief is expressly discussing the '298 Patent, not Birrell.

construction by inserting the Board's incorrect "without the use of wires" construction. Thus, Samsung's argument does not address Patent Owner's construction. Second, Birrell's capacitive lighting tile is "secured to the supporting surface by receptive force" via magnets, "mechanical fasteners" or "adhesives." Appx1188, Appx1195 [Birrell], 6:31-35; 13:8-14. Thus, Birrell's lighting tile is physically connected to the supporting surface.

Samsung quotes Birrell at 3:17-21, which states "the device may be coupled to the power source without requiring any direct connection between the respective conductive elements of the device and the supporting surface." Appellee Br., 55 (quoting Appx1185 [Birrell], 3:17-21). This quote is discussing the capacitive plates (i.e., *conductive elements*") of Birrell's capacitors. As with every capacitor, there is a dielectric material between two capacitive plates that prevents the plates from contacting each other. Appellant Br. 30, Appx319, Appx348-349 [Patent Owner Response]; Appx415-416, Appx435-436 [Sur-Reply]; Appx6067-6070, Appx6096 [Credelle Decl.]; Appx1203, Appx1205 [Birrell], 21:23-24; 23:2-6. Thus, Samsung's argument again reduces to arguing the Board's construction, which requires that all capacitors receive power wirelessly because all capacitors are formed using a dielectric between two plates.

Further, the quoted section of Birrell is not discussing wireless power transfer. Instead, it points out that capacitors and magnets provide the further advantage of

30

being mounted "without any physical damage to the supporting surface." Appx1185 [Birrell], 3:21-22.

Samsung argues that Birrell's teachings directly connecting its light tile 50 to the supporting surface "do not—as Lynk suggests—directly connect the capacitive elements together…." Appellee Br., 56-57. Samsung's argument not only mischaracterizes Patent Owner's position, but it also applies the Board's incorrect construction to argue Birrell teaches "receiving power wirelessly." *Id.* Again, Birrell would not disclose capacitors if its "capacitive elements" (i.e., its capacitive plates) were connected without a dielectric layer between them. But Birrell's mere disclosure of capacitors does not mean that those capacitors receive power wirelessly, and, to the contrary, Birrell treats its capacitors as ordinary "wired" circuit elements. Thus, Samsung's argument again reduces to the Board's incorrect construction—i.e., whether a POSITA would consider all capacitors to "receiv[e] power wirelessly" in the context of the '298 Patent.

Samsung also argues that magnets are not "required for securing the light tile to the surface." Appellee Br., 57 (citing Appx1188 [Birrell], 6:31-36. The cited portion of Birrell highlights the error in Samsung's analysis. The cited portion of Birrell states that, while magnets are preferred for forming Birrell's capacitors, Birrell's light tile "may be secured to the supporting surface in any suitable manner such [as] by mechanical fasteners or through an adhesive or the like." Appx1188 [Birrell],

6:31-36. This underscores the fact that Birrell's light tile is "physically connected" to the supporting surface.

Samsung references Patent Owner's argument that capacitors are used for many applications that do not receive power wirelessly. Appellee Br., 57 (citing Appellant Br., 29-30). Samsung argues that Patent Owner is incorrect under the Board's construction. *Id*. Samsung again avoids addressing the issue. The Board's position requires that all capacitors "receiv[e] power wirelessly," a position which (1) the intrinsic record, (2) Birrell, and (3) a POSITA do not support. Appellant Br., 16-24. While Samsung focuses on the fact that capacitors' dielectric is not literally a metal wire, it again avoids addressing the point that many common circuit elements (including capacitors, transistors, and diodes) conduct without using a metal wire. Appellant Br., 30. The mere use of these elements in a circuit does not mean that the circuit is "receiving power wirelessly."

Birrell does not disclose "receiving power wirelessly" under the proper construction. Accordingly, Birrell does not anticipate claims 6 and 24.

## V.    CONCLUSION

For the foregoing reasons, this Court should reverse the Board's rulings and hold claims 6 and 24 patentable.

Date: December 4, 2023                    Respectfully submitted,

                                          */s/* Stephen P. McBride
                                          Stephen P. McBride
                                          Stephen T. Schreiner
                                          James T. Carmichael
                                          Minghui Yang
                                          CARMICHAEL IP, PLLC
                                          8607 Westwood Center Drive, Suite 270
                                          Tysons, VA 22182
                                          (703) 646-9255
                                          schreiner@carmichaelip.com
                                          jim@carmichaelip.com
                                          stevemcbride@carmichaelip.com
                                          mitch@carmichaelip.com

                                          *Counsel for Appellant Lynk Labs, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the undersigned date, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all parties who are registered CM/ECF users.

*/s/* Stephen P. McBride
*Counsel for Appellant*

December 4, 2023

## CERTIFICATE OF COMPLIANCE

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 6507 words.


Respectfully submitted,

*/s/* Stephen P. McBride
*Counsel for Appellant*


December 4, 2023